**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

CEMENT AND CONCRETE WORKERS
DISTRICT COUNCIL WELFARE FUND;
CEMENT AND CONCRETE WORKERS
DISTRICT COUNCIL PENSION FUND;
CEMENT AND CONCRETE WORKERS
DISTRICT COUNCIL ANNUITY FUND;
CEMENT AND CONCRETE WORKERS
TRAINING AND APPRENTICESHIP FUND;
CEMENT AND CONCRETE WORKERS
DISTRICT COUNCIL SCHOLARSHIP FUND;
MARGARET BOWEN, in her fiduciary capacity
as FUND AMINISTRATOR; and CEMENT
AND CONCRETE WORKERS DISTRICT
COUNCIL

|                                    |                                        |
|------------------------------------|----------------------------------------|
|                       Plaintiffs,  | **REPORT AND RECOMMENDATION**          |
|          v.                        | 20-cv-00206 (DLI) (ST)                 |

BAROCO CONTRACTING CORPORATION;
And NOEL BARRY, in his Personal Capacity,

                         Defendants.
-----------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

On January 10, 2020, Plaintiffs Cement and Concrete Workers District Council Welfare

Fund; Cement and Concrete Workers District Council Pension Fund; Cement and Concrete

Workers District Council Annuity Fund; Cement and Concrete Workers Training and

Apprenticeship Fund; Cement and Concrete Workers District Council Scholarship Fund

(collectively, the "Funds"); Margaret Bowen, in her fiduciary capacity as Fund Administrator

("Bowen"); and Cement and Concrete Workers District Council ("Union") (together with the

Funds and Bowen, "Plaintiffs") commenced this action against Baroco Contracting Corporation

("Baroco") and Noel Barry ("Barry") (collectively, "Defendants"), bringing claims under the

Employee Retirement Income Security Act of 1974 ("ERISA"), the Labor Management Relations Act of 1947 ("LMRA"), and under New York law. Defendants have failed to answer or otherwise respond to Plaintiffs' Amended Complaint, and Plaintiffs have filed a Motion for Default Judgment against Defendants. The Honorable Dora Lizette Irizarry referred Plaintiffs' Motion to the undersigned to issue a Report and Recommendation.

For the reasons set forth below, the Court respectfully recommends that Plaintiffs' Motion for Default Judgment be GRANTED IN PART AND DENIED IN PART.

## I.    Background

### a.    Factual Background

The Funds are jointly administered, multi-employer, labor-management trust funds established and maintained pursuant to collective bargaining agreements in accordance with LMRA. Am. Compl. ¶ 6, Dkt. No. 14. The Funds are also employee benefit plans and multi-employer plans under ERISA. *Id.* The Funds provide fringe benefits to eligible employees, on whose behalf employers in the construction industry contribute to the Funds pursuant to collective bargaining agreements with the Union. *Id.* ¶ 7. The Funds are third-party beneficiaries of these collective bargaining agreements, as collectors and trustees of employer contributions made pursuant to these agreements. *Id.* The Funds maintain their offices and are administered in Flushing, New York. *Id.* Bowen is the Funds' Administrator and is a fiduciary of the Funds under ERISA. *Id.* ¶ 8. The Union is a labor organization under LMRA and represents employees in an industry affecting commerce as defined by LMRA. *Id.* ¶ 9. The Union is administered at its principal office in Astoria, New York. *Id.* In accordance with the collective bargaining agreements, the Union collects dues and contributions to the Organizer

Fund and the New York State Laborers' Political Action Committee ("NYSLPAC"), which are deducted from employee wages and remitted to the Union. *Id.* ¶ 10.

Baroco is a for-profit domestic corporation doing business in the state of New York. *Id.* ¶ 11. It is an employer, as defined by ERISA, and an employer in an industry affecting commerce, as defined by LMRA. *Id.* Baroco's principal office is in Yonkers, New York. *Id.* Barry is the President of Baroco and resides in New City, New York. *Id.* ¶ 12.

Baroco was a member of The Cement League (the "League"). *Id.* ¶ 13. As a member of the League, Baroco was bound by a collective bargaining agreement between the League and the Union (the "CBA"). *Id.* ¶ 14. The CBA covered the period from July 1, 2014 through June 30, 2017, and was extended through June 30, 2020. *Id.* Pursuant to the CBA, Baroco was required to: (1) submit to the Funds reports that detailed the number of hours Baroco employees worked within the trade and geographic jurisdictions of the Union ("Covered Work"); (2) make fringe benefit contributions to the Funds based on the number of hours of Covered Work Baroco employees perform; (3) deduct dues, Organizer Fund, and NYSLPAC checkoffs from the wages of employees who performed Covered Work; (4) remit all deducted dues, Organizer Fund, and NYSLPAC checkoffs to the Union; (5) permit the Funds and/or their designated representatives to audit Baroco's books and records; and (6) apply interest and other fees and costs on delinquent fringe benefit contributions and checkoffs. *Id.* ¶ 15.

Baroco submitted remittance reports (the "Reports") for the period from March 13, 2019 through January 14, 2020 (the "Report Period"). *Id.* ¶ 16. The Reports show at least 5,361 hours of Covered Work performed by Baroco employees during the Report Period for which Baroco failed to comply with its CBA obligations. *Id.* Specifically, Baroco failed to comply with its

obligations to make fringe benefit contributions to the Funds and deduct and/or remit checkoffs to the Union.  *Id.*

By correspondence dated December 13, 2019, the Funds demanded full and immediate payment of all delinquent fringe benefit contributions and checkoffs, plus accrued interest.  *Id.* ¶ 17.  On or about February 4, 2020, the Funds received a check from Baroco in the amount of $27,279.08.  *Id.* ¶ 18.  Baroco claims this check was for contributions owed to the Funds and checkoffs owed to the Union for 848 hours of Covered Work performed by Baroco employees during the period of April 3, 2019 through May 14, 2019.  *Id.*  The February 4, 2020 payment did not include interest on the delinquent contributions and checkoffs.  *Id.* ¶ 19.[1]  Baroco paid no other contributions or checkoffs for Covered Work performed during the Report Period.  *Id.* ¶ 20.  Baroco failed to submit remittance reports for any period after January 14, 2020, though Baroco continued to perform work after the Report period and continues to perform work.  *Id.* ¶¶ 21-22.

**b.  Procedural History**

Plaintiffs commenced this action on January 10, 2020 and filed their Amended Complaint on February 5, 2020.  *See generally* Compl., Dkt. No. 1; Am. Compl.  In the Amended Complaint, Plaintiffs bring claims against Defendants for damages and equitable relief under ERISA, LMRA, and New York law.  *See id.*  Baroco was served on February 6, 2020 and Barry was served on February 24, 2020.  Summons Returned Executed Baroco, Dkt. No. 15; Summons Returned Executed Barry, Dkt. No. 16.  Defendants failed to answer or otherwise respond to Plaintiffs' Amended Complaint.  Plaintiffs requested default be entered against Baroco on March 23, 2020 and the Clerk of Court entered default against Baroco on March 27, 2020.  Req.

---

[1] In a declaration Plaintiffs submitted with the instant Motion, Plaintiffs note that the February 4, 2020 check was returned for insufficient funds.  On or about February 20, 2020, the Funds received from Baroco a replacement check in the amount of $27,379.08, the amount of the check received on February 4, 2020, plus a $100.00 bounced check fee.  Bowen Decl. ¶¶ 18-19, Dkt. No. 26.

Certificate Default Baroco, Dkt. No. 18; Clerk's Entry Default Baroco, Dkt. No. 20.  Plaintiffs

requested default be entered against Barry on March 31, 2020 and the Clerk of Court entered

default against Barry on April 6, 2020.  Req. Certificate Default Barry, Dkt. No. 21; Clerk's

Entry Default Barry, Dkt. No. 23.  Plaintiffs filed the instant Motion for Default Judgment on

May 26, 2020.  *See generally* Motion Default J. ("Mot."), Dkt. No. 24.  In support of their

Motion, Plaintiffs submitted the following: the Declaration of Joy K. Mele ("Mele Decl."), Dkt.

No. 25; the Bowen Declaration; the Declaration of Angelo Angelone ("Angelone Decl."), Dkt.

No. 27; and an Affirmation of Attorney Services and Costs, by Bruce L. Listhaus ("Listhaus

Affirm"), Dkt. No. 28.

## II.    LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a

plaintiff to obtain a default judgment.  First, "[w]hen a party against whom a judgment for

affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by

affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Second,

after a default has been entered against a defendant, and the defendant fails to appear or move to

set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default

judgment.  Fed. R. Civ. P. 55(b)(2).  In light of the Second Circuit's "oft-stated preference for

resolving disputes on the merits," default judgments are "generally disfavored."  *Enron Oil Corp.

v. Diakuhara,* 10 F.3d 90, 95–96 (2d Cir. 1993).  "Accordingly, just because a party is in default,

the plaintiff is not entitled to a default judgment as a matter of right."  *Mktg. Devs., Ltd. v. Genesis

Imp. & Exp., Inc.*, No. 08-CV-3168 (CBA) (CLP), 2009 WL 4929419, at *2 (E.D.N.Y. Dec. 21,

2009) (citing *Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993)).

On a motion for default judgment, the Court "is required to accept all of the [plaintiff's]

factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). In determining whether to issue a default judgment, the Court has the responsibility to ensure that plaintiff's "allegations establish [defendant's] liability as a matter of law." *Id.*; *accord City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011). In other words, "after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Rolls–Royce PLC v. Rolls–Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citation omitted).

"[I]t is well established that '[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (quoting *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). If liability is established as to a defaulting defendant, the plaintiff must then establish damages to a "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). The Court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages [or] establish the truth of any allegation by evidence." Fed. R. Civ. P. 55(b)(2). However, the Court is not required to hold a hearing if the party seeking damages submits "[d]etailed affidavits and documentary evidence" in support of its request. *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53-54 (2d Cir. 1993) (citing *Action S.A. v. Marc Rich & Co.* 951 F.2d 504, 508 (2d Cir. 1991); *Fustok v. Conti-Commodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).

## III. DISCUSSION

### a. Jurisdiction

This Court has federal question jurisdiction over Plaintiffs' claims arising under ERISA and LMRA.  28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the . . . laws . . . of the United States"); *see also* 28 U.S.C. § 1337; 29 U.S.C. § 1132(e), (f); 29 U.S.C. § 185(c).  This Court has supplemental subject matter jurisdiction over Plaintiffs' claims arising under New York law.  28 U.S.C. § 1367 (in a "civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy").  Venue is proper under ERISA § 502(e)(2) and LMRA § 301.  29 U.S.C. § 1132(e)(2); 29 U.S.C. § 185(c).

### b.  Default

Despite being properly served by Plaintiffs, Defendants failed answer or otherwise respond to Trustees' Complaint.  *See* Summons Returned Executed Baroco; Summons Returned Executed Barry.  In response to Plaintiffs' requests for default, the Clerk of Court entered Certificates of Default against Defendants. *See* Req. Certificate Default Baroco; Req. Certificate Default Barry; Clerk's Entry Default Baroco; Clerk's Entry Default Barry. Thus, per the standard provided by Federal Rule of Civil Procedure 55(a), Defendants are properly considered to have admitted all factual allegations in the Complaint and are subject to this Court's assessment of his liability thereby.

### c.  Delinquent Fringe Benefit Contributions

#### i.  Liability

Plaintiffs allege Baroco is liable for failing to timely pay fringe benefit contributions for the Report Period, in breach of its obligations under the CBA and ERISA.  *See* Am. Compl. ¶¶ 23-41; Mele Decl. ¶¶ 42-45.  Per ERISA § 515,

7

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145(g)(2).

The CBA requires Baroco to make fringe benefit contributions to the Funds for each hour of Covered Work performed by Baroco employees.  Am. Compl. ¶¶ 15, 24.  Baroco employees performed at least 5,361 hours of Covered Work during the Report Period, but Baroco submitted contributions for only 848 hours of Covered Work its employees performed between April 3, 2019 and May 14, 2019.  *Id.* ¶¶ 16, 18.  Baroco thus failed to make contributions for at least 4,513 hours of Covered Work in breach of the CBA.  *See id.* ¶¶ 25-26.  As a failure to make contributions in accordance with the terms of a collectively bargained agreement, Baroco's breach of the CBA violated ERISA § 515.

Under ERISA § 502, a court that finds an employer violated § 515 shall award the multiemployer plan: (1) unpaid contributions, (2) interest on unpaid contributions, (3) an amount equal to the greater of interest on the unpaid contributions or liquidated damages provided for under the agreement but not to exceed twenty percent of the unpaid contributions, (4) reasonable attorney's fees and costs, and (5) such other legal or equitable relief as the Court deems appropriate.  29 U.S.C. § 1132.  Accordingly, because of its failure to pay fringe benefit contributions, Baroco is liable to the Funds for damages under ERISA.  The Court thus respectfully recommends granting Plaintiffs' ERISA claim for delinquent contributions, and granting Plaintiffs damages as discussed below.  The Court will address claims for equitable relief based on Baroco's ERISA liability in a separate section of this Report and Recommendation.

### ii.  Damages

### 1.  Unpaid Contributions

Plaintiffs claim Baroco owes $119,792.73 in unpaid fringe benefit contributions.  Mele Decl. ¶¶ 44-45.  As support, Plaintiffs submit the Reports.  *See* Bowen Decl., Ex. 2.  The Reports show the amounts per hour of Covered Work that Baroco is to pay to the Funds, as well as the number of hours worked by employees on a weekly basis.  *See id.*  The Court has reviewed the Reports and finds Plaintiffs have shown they are entitled to damages marginally greater than the claimed amount, and respectfully recommends awarding Plaintiffs $119,792.83 in unpaid contributions.[2]

### 2.  Interest

Plaintiffs seek interest in the amount of. $15,636.98.  Mele Decl. ¶ 52.  ERISA instructs that interest on unpaid contributions should be awarded at the rate set forth under the parties' agreement.  29 U.S.C. § 1132(g).  Further, an employer that pays delinquent contributions after an action was commenced is still required to pay interest on those contributions.  *See Finkel v. Allstar Elec. Corp.*, 11-CV-3222 (KAM)(RER), 2013 WL 4806951, at *8 (E.D.N.Y. Sept. 9, 3013) (stating "an employer cannot avoid paying interest . . . by paying off contributions after an action has commenced" and awarding interest on late-paid contributions).

Here, the CBA provides for interest on delinquent contributions at a rate of eighteen percent per year.  Angelone Decl., Ex. 1 at 33-34, Dkt. No. 27-1.  Interest on delinquent monthly contributions begins to accrue fifteen days after those contributions were due.  Bowen Decl. ¶ 15.  Plaintiffs set the end date of interest accruing on delinquent contributions at May 20, 2020.  *See* Mele Decl., Ex. 6, Dkt. No. 25-6.  Based on these standards and contributions owed, as shown in the Reports, Plaintiffs provide their calculations for interest due on unpaid contributions.  *See id.*

---

[2] This variation is the result of differences in calculation related to contributions for the month of August 2019 and the week ending October 8, 2019.

They find they are due interest in the amount of $12,704.13. *Id.* The Court has reviewed the calculations and has found them accurate, except for the calculations pertaining to the months of August and October 2019. The Court finds Plaintiffs are due interest on unpaid contributions in the amount of $12,704.15.[3] Similarly, Plaintiffs submit their calculations for interest owed on contributions from Baroco for the period of April 3, 2019 through May 14, 2019. *See* Mele Decl., Ex. 7, Dkt. No. 25-7. This amount is $2,932.85. *Id.* The Court finds these calculations to be accurate. Thus, the Court respectfully recommends Plaintiffs be awarded total interest on unpaid and late-paid contributions in the amount of $15,637.00.

### 3. Liquidated Damages

Plaintiffs seek liquidated damages in the amount of $23,958.55. Mele Decl. ¶ 56. Under ERISA, the Funds are entitled to the greater of: (1) interest on the unpaid contributions; or (2) liquidated damages provided for in the CBA, but not to exceed twenty percent of the unpaid contributions. *See* 29 U.S.C. § 1132(g)(2)(C). Here, the CBA provides for liquidated damages of twenty percent of unpaid contributions. Angelone Decl., Ex. 1 at 33-34. Given the Court's slightly altered calculation of principal damages, liquidated damages on the unpaid contributions would thus be equal to $23,958.57. This exceeds the amount of interest on unpaid contributions, which is $12,704.15. Mele Decl., Ex. 6. The Court therefore respectfully recommends Plaintiffs be awarded $23,958.57 in liquidated damages on unpaid contributions.

### 4. Attorneys' Fees and Costs

Plaintiffs seek $5,910.00 in attorneys' fees and $874.66 in costs. Mele Decl. ¶¶ 61-62. "Courts in this circuit assess fee applications using the 'lodestar method,' under which a reasonable hourly rate is multiplied by a reasonable number of hours expended." *Gesualdi v.*

---

[3] Based on adjustments of interest due for August 2019 to $1,505.56 and interest due for October to $1,100.42.

*Mack Excavation & Trailer Serv., Inc.,* No. CV 09-2502 (KAM) (JO), 2010 WL 985269, at *6 (E.D.N.Y. Feb. 12, 2010), *adopted as modified by* 2010 WL 985294 (E.D.N.Y. Mar. 15, 2010). The reasonable hourly rate is the "rate a paying client would be willing to pay," based on the "prevailing hourly rate in the community . . . where the district court sits." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. Of Albany Bd. Of Elections*, 522 F.3d 182, 190 (2d Cir. 2008) (internal quotation marks, brackets omitted). A party seeking an award of attorney's fees also "must support its application by submitting contemporaneous time records that detail, for each attorney, the date, the hours expended, and the nature of the work done." *Finkel v. Omega Commc'n Servs., Inc.*, 543 F.Supp.2d 156, 163 (E.D.N.Y. 2008) (internal quotation marks omitted). Additionally, a court assessing an attorney's fee application must determine the reasonableness of the hours expended by counsel. *See, e.g.*, *Bakery and Confectionery Union and Indus. Int'l Pension Fund, et al. v. Ges Bake Shop, Inc.*, No. 13-CV-728 (FB) (CLP), 2014 WL 1159821, at *9 (E.D.N.Y. Mar. 21, 2014).

The attorneys' fees that Plaintiffs request are based on work performed by partner Bruce L. Listhaus ("Listhaus), senior associate Joy K. Mele ("Mele"), associate Jonathan Sobel ("Sobel"), and paralegals Charles Simpson-Brown ("Simpson-Brown") and Giselle Villarreal ("Villarreal"). Listhaus Affirm ¶¶ 1, 4-11. Listhaus has practiced law since 1988 and has over twenty years of experience representing clients in ERISA and employment-related cases. *Id.* ¶ 4. Listhaus spent 0.4 hours working on this case, at an hourly rate of $275.00. *Id.* ¶ 5. Mele has practiced law since 2001 and has over ten years of experience representing clients in ERISA and labor-related cases. *Id.* ¶ 6. Mele spent 8.5 hours working on this case, at an hourly rate of $225.00. *Id.* ¶ 7. Sobel has practiced law since 2018. *Id.* ¶8. Sobel spent 23.1 hours working on this case, at an hourly rate of $150.00. *Id.* ¶ 9. Simpson-Brown has been a paralegal with

11

counsel's firm since 2019. *Id.* ¶ 10. Simpson-Brown spent 0.2 hours of work on this case, at an hourly rate of $65.00. *Id.* Villarreal has been a paralegal at the firm since 2019. *Id.* ¶ 11. Villarreal spent 6.3 hours of work on this case. at an hourly rate of $65.00. *Id.* Plaintiffs submitted with the Listhaus Affirmation a record of the work performed by counsel and the amount of time spent on each task. *See* Listhaus Affirm, Ex. 1, Dkt. No. 28-1.

The Court finds the rates charged by counsel to be reasonable. *See, e.g.*, *Trs. of Leather Goods, Handbags, and Novelty Workers' Union Local 1 Joint Ret. Fund v. Cent. Fur Storage Co.*, 18-CV-7224 (AMD) (RER), 2019 WL 3937132, at *11-12 (E.D.N.Y. Aug. 2, 2019) (finding $300 per hour reasonable for partner and $250 per hour reasonable for senior associate, in ERISA matter), *adopted by* 2019 WL 3936676 (E.D.N.Y. Aug. 20, 2019); *Finkel v. Millennium Fire Servs., LLC*, 2019 WL 1605186, at *4 (E.D.N.Y. Mar. 29, 2019) (finding $350 per hour reasonable for partner and $275 per hour reasonable for associate, in ERISA matter); *Div. 1181 Amalgamated Transit Union—N.Y. Emps.' Pension Fund v. D & A Bus Co., Inc.*, 270 F.Supp.3d 593, 621-23 (E.D.N.Y. 2017) (finding $200 per hour reasonable for associate attorney in ERISA matter); *Ferrara v. Prof'l Pavers Corp.*, 11-CV-1433 (KAM)(RER), 2013 WL 1212816, at *5 (E.D.N.Y. Mar. 23, 2013) ("in recent ERISA-default actions, Eastern District opinions have generally found that reasonable rates are approximately $200–$300 for senior associates, $100–$175 for junior associates, and $70–$90 for paralegals") (collecting cases). Likewise, the Court finds the amount of time spent and the nature of the tasks performed to be reasonable. Accordingly, the Court respectfully recommends Plaintiffs be awarded $5,910.00 in attorneys' fees.

Plaintiffs' request for costs is based on the $400.00 filing fee and $474.66 in fees for service of the Summonses, the Complaint, and the Amended Complaint upon Defendants.

Listhaus Affirm ¶ 15.  Plaintiffs provide a receipt and invoices for these costs.  *See*, Listhaus

Affirm, Ex. 2, Dkt. No. 28-2.  The Court finds these to be reasonable and thus respectfully

recommends Plaintiff be awarded $874.66 in costs.  Therefore, the Court respectfully

recommends Plaintiff be awarded a total amount of $6,784.66 in attorneys' fees and costs.

### d.  Unremitted and Late-Paid Checkoffs

#### i.  Liability

Plaintiffs allege breach of contract for Baroco's failure to remit dues, Organizer Fund,

and NYSLPAC checkoffs during the Reports Period.  *See* Am. Compl. ¶¶ 42-50; Mele Decl. ¶¶

64-65.  Plaintiffs do not explicitly state whether they bring their contract claim under state law or

LMRA.  They do, however, invoke jurisdiction under LMRA.  Am. Compl. ¶ 4; Mele Decl. ¶ 15.

LMRA § 301 "completely preempts 'any state cause of action'" arising from a violation of a

labor contract.  *Silverman v. Miranda*, 116 F. Supp. 3d 289, 306 (S.D.N.Y. 2015) (quoting

*Franchise Tax Bd. of State of Cal. V. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23

(1983)).  Accordingly, "when resolution of a state-law claim is substantially dependent upon

analysis of the terms of an agreement made between the parties in a labor contract, that claim

must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract

law."  *Mason Tenders Dist. Council Welfare Fund v. Kafka Constr., Inc.*, 16 Civ. 9911 (KPF),

2018 WL 2138621, at *4 (S.D.N.Y. May 9, 2018) (quoting *Allis-Chalmers Corp. v. Lueck*, 471

U.S. 202, 220 (1985)).  The Court thus considers this claim under LMRA.

The CBA requires Baroco to deduct and remit to the Union, or any agency designated by

the Union, dues, Organizer Fund and NYSPLAC checkoffs withheld from the wages of

employees who perform Covered Work.  Am. Compl. ¶¶ 15, 43.  As described in the Amended

Complaint, Baroco failed to deduct or remit checkoffs for at least 4,513 hours of Covered Work

performed by its employees during the Report Period.  Accordingly, Baroco is liable for its failure to deduct and remit the checkoffs to the Union.  *See Bricklayers Ins. & Welfare Fund v. P.P.L. Constr. Servs. Corp.*, 12-CV-3940 (DLI) (ST), 2017 WL 9481016, at *10 (E.D.N.Y. Jan. 12, 2017) (finding defendant liable under LMRA for failing to remit dues in breach of agreement), *adopted by* 2017 WL 1093192 (E.D.N.Y. Mar. 23, 2017).

Plaintiffs also seek interest and liquidated damages on the unpaid checkoffs, as provided for in the CBA.  Mele Decl. ¶¶ 66-74; *see* Angelone Decl., Ex. 1 at 33-34.  However, because "LMRA is silent with respect to a prejudgment interest rate, the 'common practice' among courts within the Second Circuit is to grant interest at a rate of 9%, the rate of prejudgment interest under New York State law." *Kafka Constr.*, 2018 WL 2138621, at *5 (quoting *Serv. Emps. Int'l Union, Local 32BJ, AFL-CIO v. Stone Park Assocs., LLC*, 326 F. Supp. 2d 550, 555 (S.D.N.Y. 2004)).  The Court is not aware of authority in which a court construes a plaintiff's claim for violation of a labor contract as arising under LMRA and awards liquidated damages on unpaid checkoffs, nor have Plaintiffs cited such authority in connection with their request.  Accordingly, the Court finds Plaintiffs are entitled to interest on the checkoffs accruing at a rate of nine percent, but are not entitled to liquidated damages on the same.

### ii.  Damages

Plaintiffs allege Baroco is liable for unremitted checkoffs in the principal amount of $13,455.80.  Mele Decl. ¶ 65.  To support their claim, Plaintiffs submit the Reports.  *See* Bowen Decl., Ex. 2.  The Reports show the amounts per hour to be deducted from employee pay for checkoffs, as well as the number of hours worked by employees on a weekly basis.  *See id.*  The

Court has reviewed the Reports and finds that Plaintiffs are entitled to the slightly higher amount of $13,467.70 for unremitted checkoffs.[4]

Plaintiffs request interest for unpaid and late-paid checkoffs in the total amount of $1,659.99.  Mele Decl. ¶ 72.  However, as discussed, the Court recommends awarding interest on the checkoffs at nine percent instead of the eighteen percent provided in the CBA.  *See* Angelone Decl., Ex. 1 at 33-34.  Interest on delinquent checkoffs begins accruing fifteen days after their due date.  Bowen Decl. ¶ 15.  In their calculations, Plaintiffs set May 20, 2020 as the end date for interest accrual on unpaid checkoffs.  *See* Mele Decl., Ex. 8, Dkt. No. 25-8.  Interest on late-paid checkoffs stopped accruing on February 20, 2020, when Plaintiffs received the check from Baroco for Covered Work performed between April 3, 2019 and May 14, 2019.  *See* Mele Decl., Ex. 9, Dkt. No. 25-9.  Based on this rate, these date ranges, and the Court's calculation of principal checkoffs, the Court recommends awarding interest as follows: for the unpaid checkoffs, $682.64; and, for the late-paid checkoffs, $148.17.

In sum, the Court respectfully recommends granting Plaintiffs' LMRA claim and awarding Plaintiffs $13,467.70 in principal amount for unremitted checkoffs, plus $682.64 in interest on that amount and an additional $148.17 in interest on the late-paid checkoffs.  As indicated directly below, Barry is jointly and severally liable with Baroco for damages on the unremitted checkoffs.

### e.  Conversion

#### i.  Liability

Plaintiffs allege conversion against Barry.  Am. Compl. ¶¶ 83, 88; Mele Decl. ¶¶ 103-107.  Under New York law, "[c]onversion occurs when a defendant exercises unauthorized

---

[4] The Court believes this variation is the result of differences in calculation related to checkoffs for the month of June 2019.

dominion over personal property in interference with a plaintiff's legal title or superior right of possession." *LoPresti v. Terwilliger*, 126 F.3d 34, 41 (2d Cir. 1997) (quoting *Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F. Supp. 117, 124 (S.D.N.Y. 1996)).

Plaintiffs allege Barry deducted or directed the withholding of checkoffs from Baroco's employees' wages for hours worked during the Report Period. Am. Compl. ¶ 85. Plaintiffs further contend that Barry used the withheld deductions, or directed them to be used, to pay Baroco's expenses and creditors rather than forwarding those monies to the Union. *Id.* ¶ 87. These allegations are sufficient to establish that Barry converted the withheld funds. *See LoPresti*, 126 F.3d at 41-42 ("an action will lie under New York law for conversion of money where there is an obligation to return or otherwise treat in a particular manner the specific money in question") (quoting *Vanderbilt Univ. v. Dipsters Corp.*, 84 Civ. 7215-CHS, 1986 WL 10471, at *3 (S.D.N.Y. Sept. 17, 1986)); *see also Bricklayers Ins. & Welfare Fund v. McGovern & Co., LLC*, 17-CV-6067 (SJ) (ST), 2019 WL 2271942, at *9 (E.D.N.Y. Mar. 6, 2019) (finding defendant liable for conversion, where defendant failed to remit dues deducted from union members' wages), *adopted by* 2019 WL 1772399 (E.D.N.Y. Apr. 23, 2019).

Plaintiffs also seek interest on their conversion claim. Mele Decl. ¶¶ 108-111. The New York Civil Practice Law and Rules permits interest on such a claim at an annual rate of nine percent. *See* N.Y. C.P.L.R. §§ 5001, 5004. Plaintiffs are thus entitled to interest on their conversion claim against Barry.

### ii. Damages

Plaintiffs allege Barry is liable for $13,455.80 for conversion of the unremitted checkoffs. Mele Decl. ¶ 107. "Damages for conversion are usually the value of the property at the time of conversion." *Rajeev Sindhwani, M.D., PLLC v. Coe Bus. Serv., Inc.*, 861 N.Y.S.2d 705, 708

(App. Div. 2008).  As discussed, this Court has calculated the principal amount of unpaid checkoffs to be $13,467.70.  Plaintiffs are thus entitled to repayment of checkoffs in the amount of $13,467.70.  Plaintiffs are further entitled to interest on this amount.  In support of this request, Plaintiffs provide their interest calculations.  *See* Mele Decl., Ex. 10.  However, the Court has found that, given the adjusted amount of principal checkoffs, interest on the conversion claim should be $682.64.  The Court respectfully recommends granting Plaintiffs' conversion claim and awarding Plaintiffs $13,467.70 in unremitted checkoffs plus $682.64 in interest, for which Barry is jointly and severally liable with Baroco.

### f.  Claims for Injunctive Relief

Plaintiffs request the following forms of injunctive relief: (1) an order directing Baroco to post a bond or provide a cash alternative, Mele Decl. ¶¶ 75-79; (2) an order directing Baroco to permit an audit of its books and records for the period commencing on February 20, 2019 to the date of the audit, *Id.* ¶¶ 80-85; (3) an order enjoining Baroco from failing to pay or submit the Reports, contributions, and checkoffs, and from failing to cooperate in the audit, for so long as Baroco is required to do so under the CBA, *Id.* ¶¶86-92; and (4) an order enjoining Baroco from failing to pay or submit the Reports and contributions, and from failing to cooperate in the audit, for so long as Baroco is required to do so under ERISA, *Id.* ¶¶ 93-102.

ERISA makes clear that, in a successful action by a plan to enforce its rights under the statute, the plan may be awarded "such other legal or equitable relief as the court deems appropriate."  29 U.S.C. § 1132(g)(2)(E).  However, "injunctive relief does not follow automatically upon a finding of statutory violations."  *La Barbera v. Les Sub-Surface Plumbing, Inc.*, 06 CV 3343(NG)(KAM), 2008 WL 906695, at *10 (E.D.N.Y. Apr. 3, 2008) (quoting *Town of Huntington v. Marsh*, 859 F.2d 1134, 1143 (2d Cir. 1988)).  Accordingly, a party seeking

injunctive relief "must demonstrate irreparable harm and the absence of an adequate remedy at law." *LaBarbera v. Hardin Contracting Inc.*, 07-CV-5063 (ENV)(SMG), 2010 WL 148084, at *4 (E.D.N.Y. Jan. 13, 2010) (citing *Rondeau v. Monsinee Paper Corp.*, 422 U.S. 49, 57 (1975)).

As to Plaintiffs' request for an audit, Plaintiffs explain that an audit is "necessary in order to confirm that contributions and checkoffs owed . . . are paid in full." Mele Decl. ¶ 82. Plaintiffs further aver that an audit is necessary to determine that the Reports accurately reflect the employees who performed Covered Work and the contributions and checkoffs due. *Id.* ¶ 83. Courts in this Circuit often grant audit requests from plaintiffs, where the defendant has not already submitted to an audit and the applicable agreement provides for auditing. *See Sullivan v. Marble Unique Corp.*, 10-CV-3582 (NGG) (LB), 2011 WL 5401987, at *14 (E.D.N.Y. Aug. 30, 2011) (collecting cases). The audit must, however, be limited to records from the time period for which the employer was bound by the agreement. *See Bricklayers Ins. & Welfare Fund v. Verse Inc.*, 12-CV-4271 (FB)(JMA), 2013 WL 4883966, at *8 (E.D.N.Y. Sept. 11, 2013) (collecting cases). Here, there is nothing to indicate that Plaintiffs have already conducted an audit. Further, the CBA requires employers submit to audits. *See* Angelone Decl., Ex. 1 at 31. According to the Amended Complaint, Baroco was bound by the CBA through June 30, 2020. Am. Compl. ¶ 14. Given that Plaintiffs cannot verify that they have been paid in full without an audit, and the frequency with which similar requests are granted, the Court respectfully recommends that an order be issued requiring Baroco to submit to an audit for the period of February 20, 2019 through June 30, 2020. If the audit reveals Baroco owes additional damages to Plaintiffs, the Court recommends Plaintiffs be allowed to supplement their Motion for Default Judgment within thirty days of completion of the audit. *See La Barbera v. J F H Mak Trucking, Inc.*, 98-CV-7291 (SJ) (RLM), 2007 WL 1827833, at *4 n.11 (E.D.N.Y. June 22, 2007)

18

(collecting cases in which a court entered default judgment against a party, required that party to submit to an audit, and reserved jurisdiction to consider a motion to modify the judgment based on the audit).

Plaintiff's other requests for injunctive relief do not fare as well. Plaintiffs' request for an order directing Baroco to post bond a bond or cash alternative derives from a provision of the CBA. *See* Angelone Decl., Ex. 1 at 29-30. However, Plaintiffs do not indicate how a remedy at law would be insufficient, or how they will suffer irreparable harm if an order directing Baroco to post a bond is not entered. As to Plaintiffs' requests for orders enjoining Baroco from failing to submit payments and Reports in the future, and from failing to cooperate in the audit, Plaintiffs state that they have no adequate remedy at law and that they will suffer immediate and irreparable harm without such orders. *See* Mele Decl. ¶¶ 90-91, 100-01. In connection with these requests, Plaintiffs reference a past failure of Baroco to pay checkoffs. *Id.* ¶¶ 89, 99. Plaintiffs note that this failure occurred between April 2018 and February 2019, and that Barry and Plaintiffs entered into a stipulation settling this matter in May 2019. *Id.* ¶ 40. They do not, however, suggest that Barry failed to pay the settlement, or that Baroco would be unable or would otherwise refuse to pay a money judgment entered by this Court. Additionally, Plaintiffs do not offer any explanation as to what irreparable injury they might suffer if the Court denies this request. Accordingly, this Court respectfully recommends Plaintiffs' remaining claims for injunctive relief be denied. *See Gesualdi v. Frank J. Batchelder Transp. LLC*, 10-CV-320 (ENV)(JMA), 2010 WL 4608270, at *6 (E.D.N.Y. Aug. 5, 2010) (denying permanent injunction against defendant with history of noncompliance, where plaintiffs did not show money judgment would be inadequate), *adopted by* 2010 WL 4622131 (E.D.N.Y. Nov. 4, 2010); *Hardin Contracting*, 2010 WL 148084, at *4 (denying injunction enjoining defendant from future

violations of agreement, where plaintiffs' "conclusory allegations fail to establish irreparable harm and the absence of an adequate remedy at law").

## IV.    CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Plaintiffs' Motion for Default Judgment be GRANTED IN PART AND DENIED IN PART.  The Court respectfully recommends that Plaintiffs' request for a default judgment on their ERISA, contract, and conversion claims be GRANTED and Plaintiffs be awarded damages in the following amounts:

- against Baroco, for unpaid ERISA contributions: $119,792.83 in principal damages; $15,637.00 in total interest; $23,958.57 in liquidated damages; and $6,784.66 in total attorneys' fees and costs;

- against Baroco and Barry, jointly and severally, for unremitted checkoffs: $13,467.70 in principal unremitted checkoffs; and $682.64 in interest on unremitted checkoffs;

- against Baroco: $148.17 in interest on the late-paid checkoffs.

The Court also respectfully recommends that Plaintiffs' claim seeking an order subjecting Baroco to an audit be GRANTED, and that Plaintiffs be allowed to supplement their Motion for Default Judgment within thirty days of completion of the audit, if the audit reveals further amounts are owed.  The Court respectfully recommends that the remainder of Plaintiffs' claims for injunctive relief be DENIED.

## V.    OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States

Court of Appeals.  *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at \*30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

_____
/s/
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
       March 17, 2021